## A. GARZA AND A. LOPEZ *v.* THE STATE.

1. DISTRICT COURT.—In case of the non-appearance of the judge on the day fixed by law for the opening of the District Court, and in case no special judge is elected, the law commands the sheriff, or in his default any constable of the county, to open and adjourn the court from day to day for three days, and at noon of the fourth day to adjourn it until its next regular term, unless the judge has

arrived or a special judge has been elected. After the court has been thus adjourned until the next term, it is not competent for the judge to re-open and hold the term which has lapsed.

2. Same.— The judge of the District Court of H. county having failed to appear during the time limited by law, and no special judge having been elected, the sheriff, at noon of the fourth day, adjourned the court until its next regular term. Later on the same day the judge arrived, ordered the court to be opened and the sheriff's proceedings to be set aside, and then organized a grand jury who indicted the appellants for murder. The appellants interposed timely objections to the action of the judge and to all the proceedings had thereunder. The venue of the cause was changed to C. county, and there the appellants were convicted of murder in the first degree. Held, that the action of the judge in attempting to open the court in H. county was without authority of law, and all proceedings at such unauthorized term were null and void; wherefore the conviction is set aside and the cause dismissed.

Appeal from the District Court of Cameron. Tried below before the Hon. John C. Russell.

The opinion of the court states clearly the manner in which the so-called indictment in the present case was found. It was presented on September 18, 1880, and purports to be the act of the grand jury of the county of Hidalgo, and to charge that Benito Lopez, Rafael Villegas, Solferino Mercado, Alejandro Garza, Alejos Garza and Antonio Lopez, on or about the 15th of May, 1880, in the said county of Hidalgo, did of their malice aforethought kill and murder one Henry Bishop, with knives. On the same day this indictment was presented, a certified copy of it was served upon W. H. Russell, the counsel and attorney of Alejos Garza and Antonio Lopez, the appellants in this case; and thereupon they immediately filed their sworn motion in abatement, alleging in it the several matters narrated in the opinion. In behalf of the State the district attorney on the same day excepted to the motion for insufficiency, and the exception was sustained. The defense excepted to the ruling, and the matters involved in it were authenticated and made part

of the record by the Hon. J. C. Russell, presiding judge. The last proceedings in the cause had in the county of Hidalgo were the plea of not guilty and an order changing the venue to the county of Cameron. The order bears date the same day as the previous entries, and as cause for the change of venue assigns the impossibility of obtaining in Hidalgo county an English-speaking jury, demanded by the defendants and the district attorney. The order further recites that the defendants consented to the change of venue.

In the District Court of Cameron county, on December 21, 1881, the district attorney, with the approval of the court, entered a *nolle prosequi* as to Alejandro Garza because he "has turned State's evidence, and has been accepted for and will testify in behalf of the State in this trial." Thereupon the trial proceeded as against Alejos Garza and Antonio Lopez, the appellants, who, so far as the record shows, were the only persons of the six indicted who were in custody. The testimony at the trial was elicited from a number of witnesses, and is quite elaborate. It established the assassination of Bishop beyond all question, but was conflicting with reference to the presence and complicity of the appellants. The rulings of this court, however, involve none of the facts of the assassination, and no full account of the evidence will be here given.

Mrs. Josefa Bishop, for the State, testified that she was the widow of Henry Bishop, the deceased, who was killed in Hidalgo county in the night of Saturday, May 15, 1880. When the deceased retired that night he said he would leave a lamp burning, as he would have to get up in the night. Witness asked him what for, and he replied that he would not tell her. About 12 or 1 o'clock in the night the inmates of the house were aroused by the barking of the dogs, and the deceased (who was a country store keeper) went to the window and said "Is it you?"

The answer returned was "It is me." The deceased then dressed himself and went down stairs into the store, and witness heard sounds as of the tearing of dry goods. Witness heard voices in the store-room, but recognized none of them except her husband's, who said he expected some good goods about the next Wednesday or Thursday. Witness thought there were two or three persons in the store and heard talking there for some time. Then there was silence, and after that a noise like a cry. Witness then got out of bed, went to the head of the stairs, and called out "What is it, Henry?" Just then a man appeared at the doorway, with a *machete* (a Mexican axe), and said to the witness "It is not what is it; shut up or I will kill you." Then he pushed witness to the bed and threw her upon it, put the pillows over her head, pressed the machete upon her and demanded her keys. Witness told him first that she did not know where they were, but he again put the machete on her and she told him the keys were under the pillow. He took the keys and called out " Antonio Flores, come along." Some light from the store shone into the room, and the witness, whose head was not wholly covered, saw her servant woman, Feliciana Zamora, approaching her. Then the man, as if speaking to some one down stairs, said "Hold on, there is another one," and with a very ugly expression he told the servant to lie down on the bed or he would kill her. She lay down on the bed, and the man covered her up as he had covered up the witness. The man asked where more money was, and witness told him there was no more in the house, but that he could search, as he had the keys. The same person asked witness for the pistol, and she replied that she did not know where it was, but that Henry, her husband, might have it. He said that Henry did not have it, for he had searched him, and that witness must give it up or he would kill her. Witness then offered to get up and look for the pistol, but the

man told her not to move or he would kill her as he had already killed her husband; and she told him if he had killed her husband to kill her also. The men took the pistol away with them. One of them, as they were leaving, said "Here is the machete; if they move, kill them both." None of them remained, however, and after everything had got still the witness and her servant got up, found the lamp and lighted it, and then went down stairs and found witness's husband dead. All was in confusion in the store and dwelling. Many things were missing, besides about $500 in money which deceased had been accumulating for the purpose of buying some land. After a while the witness returned up stairs and called Eulogio, a man who lived close by; but he replied that he was afraid to come then, but would do so after daylight. He and some women came after daylight. Nobody touched the body of the deceased until the officers came and found it behind the counter in the store. The head of the deceased was split open, and there were several stabs in his neck and side. A bloody knife was found on the ground near the gate. The man who came up stairs was a tall man. While he had witness and her servant down on the bed he said, "We Cuevanios (meaning people of the neighboring Mexican town of Las Cuevas) intend to kill all the Americans, and will kill you all with them; we are not lying." He ravished the servant woman. On cross-examination the witness said she did not know who killed her husband, nor who was in her room or the store the night of the murder. The only name she heard mentioned was "Antonio Flores."

Feliciana Zamora, the servant woman, gave substantially the same testimony as Mrs. Bishop.

Alejandro Garza, the accomplice witness, implicated all the indicted defendants, and admitted his own presence when Bishop was murdered, but said he was there by compulsion of the others. The evening of the night of

the murder, Benito Lopez bought some goods at Bishop's, but left them there on an agreement to return that night and bring a beef-hide, for which Bishop was to pay in goods. When the six indicted defendants arrived at Bishop's that night, the two appellants, Alejos Garza and Antonio Lopez, were left at the gate. When Bishop opened the door the other four went into the store. Benito Lopez called for the goods he had bought. Bishop put them on the counter, and then, leaning upon the counter, began to write down a list of the articles, and as he did so Rafael Villegas drew his pistol and aimed it at Bishop's head. The pistol snapped, but the noise of the scales prevented Bishop from noticing that made by the snap of the pistol. Then Villegas, holding his pistol over his head so that Bishop would not observe it, went out and got the machete from Benito Lopez, who was at the door. Then Villegas stepped back and struck Bishop over the head with the machete. Bishop gave a cry or a sigh, and fell behind the counter. Just then the wind blew out the light, and Villegas went behind the counter and stabbed Bishop several times with a small knife, and again struck him with the machete. Just at that time Mrs. Bishop spoke, and Benito Lopez took the light and handed it to Mercado on the stairs, and told witness to shut the door so the light would not blow out. Benito gave to witness the small knife, and then took many things, and among them all the deceased's account books, so as to remove all the claims against the raiders. After a while Benito asked those upstairs if they could get no more money, and they handed him a small box containing forty or fifty dollars. After those down stairs had taken out the goods, account books, and a bag of ammunition, Villegas and Mercado joined them from above, and they all rode away to the main road. Benito Lopez had the best horse, and he changed horses with Alejos Garza, one of the appellants, and sent him two miles down the road to cut the

telegraph wire. The rest of the party started in the contrary direction, leaving the main road to meet on the road leading to Senobio Ureste's ferry on the Rio Grande. The witness made many other statements, but the foregoing was his account of the assassination. Other witnesses were introduced and examined by the State with a view to corroborate and strengthen the accomplice's inculpation of the two defendants on trial.

The defense introduced a number of witnesses to establish an *alibi* for the appellants. Five witnesses stated positively that Alejos Garza and his wife attended a dance at Miguel Lozano's the night Bishop was murdered, and that they remained at the dance until it broke up about daylight the next morning. Lozano lived five or six miles from Bishop. Two witnesses testified that Antonio Lopez passed the same night in attendance upon his sick wife.

The jury, however, found both of the appellants guilty of murder in the first degree, and assessed their punishment at death. A new trial being refused, they appealed.

*W. H. Russell,* for the appellants.

*H. Chilton,* Assistant Attorney General, for the State.

WILLSON, J. The defendants were convicted of murder in the first degree, and the death penalty assessed against them. At the threshold of the case we are confronted with a novel question, which, if the position of defendants' counsel be correct, renders void the whole proceeding from the beginning.

The 13th day of September, 1880, was the day upon which a regular term of the District Court for Hidalgo county should have convened. The judge failed to appear on that day. He also failed to appear on the next two days succeeding. The court, on those days, was opened and adjourned from day to day by proclamation

of the sheriff. On the 16th of September, 1880, the fourth day of the term, the sheriff by proclamation opened the court in the morning. The judge did not still make his appearance. At 12 o'clock on that day, the sheriff by proclamation adjourned the court until the next regular term in course. Between 6 o'clock and 8 o'clock P. M. of that day, the judge of the court arrived, and opened court, and rescinded and set aside the proceeding adjourning the court until the next term in course, and proceeded to organize a grand jury, and hold a regular term of the court, and the grand jury thus organized presented the indictment under which the defendants were afterwards convicted in Cameron county, the venue of the case having been changed to Cameron county. The proceedings of the judge in organizing the grand jury, holding a term of court, receiving the indictment, etc., were objected to by defendants at the time, and their objections appear fully in the record, and are properly presented for our consideration.

The statute provides that "should the judges of any District Court not appear at the time appointed for holding the same, and should no election of a special judge be had, the sheriff of the county, or in his default any constable of the county, shall adjourn the court from day to day, for three days; and if the judge should not appear on the morning of the fourth day, and should no special judge have been elected, the sheriff or constable, as the case may be, shall adjourn the court until the next regular term thereof." (Rev. Stats. art. 1128.)

In the case before us, there was no special judge elected. The judge did not appear until the evening of the fourth day of the term, after the court had been duly and in accordance with the statute adjourned by the sheriff until the next regular term. This court is now called upon to determine the validity of the proceeding, and we are not doubtful in our opinion of it. We think

the action of the judge in opening the court, and proceeding to hold a regular term of the court, after the expiration of the time positively fixed by law for the holding of the court, was without authority of law, and that all proceedings had at such unauthorized term are absolutely void. If a judge could proceed to hold a term of his court six hours after that term by law had expired, he could as well proceed to hold it six days, or six weeks thereafter. When the judge failed to appear and open his court on the morning of the fourth day of the term, that term of the court expired by operation of law, and he had no legal authority thereafter to hold the court. We very much regret that our view of the law compels us to hold null the proceedings in this case, as the defendants have been convicted, and perhaps justly, of a most heinous murder. But it is our duty to expound the law as we find it, and to adhere to the expressed will of the Legislature, let the consequences be what they may.

Because the entire proceedings in this case are, in our opinion, without authority of law, and void, the judgment of conviction is reversed, and the indictment dismissed.

*Reversed and dismissed.*